UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
COURT FILE NUMBER 13-CV-956 (DSD/JJK)

_____

Sarah McIvor,

        Plaintiff,

v.

Credit Control Services, Inc. dba
Credit Collection Services and
TransUnion, LLC,

        Defendants.

**PLAINTIFF'S MEMORANDUM SUPPORTING SUMMARY JUDGMENT**

_____

Defendant Credit Control Services, Inc. dba Credit Collection Services ("Debt Collector") received Plaintiff Sarah McIvor's dispute of a debt it alleged against her, yet communicated credit information regarding the debt to TransUnion, LLC ("TransUnion") without noting it was disputed. This was a violation of 15 U.S.C. § 1692e(8) of the Fair Debt Collection Practices Act (FDCPA), which prohibits "[c]ommunicating . . . to any person credit information which is known . . . to be false, including the failure to communicate that a disputed debt is disputed." McIvor submits this memorandum supporting her Motion for Summary Judgment against Debt Collector on this issue.

## ISSUES

1. Does 15 U.S.C. § 1692e(8) require debt collectors to note debts as "disputed" in each credit report update made after receiving a consumer's dispute?

    Answer: Yes.

2. Did Debt Collector communicate disputed credit information regarding McIvor's debt to TransUnion without also communicating that it was disputed?

    Answer: Yes.

3. Was this communication a violation of 15 U.S.C. § 1692e(8)?

    Answer: Yes.

## FACTS

Debt Collector alleged a $242 debt against McIvor on her credit report produced by TransUnion. Compl. Ex. C [Docket No. 6, Attach. 3]. McIvor disputed the validity of this debt through TransUnion's dispute process on April 2, 2013. Compl. Ex. A [Docket No. 6, Attach. 1]. TransUnion forwarded McIvor's dispute of the debt to Debt Collector on April 2, 2013 as required by 15 U.S.C. § 1681i(a)(2). Answer ¶ 10 [Docket No. 23]. Debt Collector updated its reporting to TransUnion in reply to McIvor's dispute on April 13, 2013, altering the debt's account history but neglecting to mark it as disputed. Hartz Aff. Ex. A. Debt Collector finally noted the dispute to TransUnion on April 17, 2013. Answer Ex.

A [Docket No. 23, Attach. 1].

## STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, [and] there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584 (1986). No genuine issue for trial exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the moving party bears the initial burden of showing that "no genuine issue as to any material fact" exists, *id.*, a party opposing a properly-supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "[T]he

mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48; "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Matsushita*, 475 U.S. at 323.

When hearing a summary judgment motion, the Court must determine "whether there is a need for a trial- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*. at 250. While the Court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party, *see Enter. Bank v. Magna Bank*, 92 F. 3d 743, 747 (8th Cir. 1996), "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex*, 477 U.S. at 327.

## ARGUMENT

**I.  The FDCPA requires a debt collector "to communicate that a disputed debt is disputed" anytime it "communicate[s] to any person" regarding a disputed debt.**

The FDCPA prohibits debt collectors from "[c]ommunicating or threatening to communicate to any person credit information which is known or

which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). The 8th Circuit addressed this provision in *Wilhelm v. Credico, Inc.*:

> Section 1692e generally prohibits 'false, deceptive, or misleading representation.' Subsection 1692e(8) applies to the 'communicating' of 'credit information.' 'Communication' is defined as 'the conveying of information regarding a debt directly or indirectly to any person through any medium.' § 1692a(2). Reading these provisions together, as we must, the relevance of the portion of § 1692e(8) on which [the plaintiff] relies — 'including the failure to communicate that a disputed debt is disputed' — is rooted in the basic fraud law principle that, if a debt collector elects to communicate 'credit information' about a consumer, it must not omit a piece of information that is always material, namely, that the consumer has disputed a particular debt.

519 F.3d 416, 418 (8th Cir. 2008). Other Circuits ruling on this issue have held likewise. *See, e.g., Brady v. Credit Recovery Co.*, 160 F.3d 64 (1st Cir. 1998), *Camacho v. Bridgeport Financial, Inc.*, 430 F.3d 1078 (9th Cir. 2005). While the FDCPA does not impose an affirmative duty on debt collectors to update a credit report after receiving a dispute, "[i]f a debt collector knows that a debt is disputed by the consumer, either from receipt of written notice (section [1692g]) or other means, and reports it to a credit bureau, he must report it as disputed." FTC Staff Commentary, 53 Fed.Reg. 50097-02, 50106 (Dec. 13, 1988). In other words, once a debt collector has received notice that a debt is disputed, all future

communications regarding the alleged debt must include a designation of this fact.  Courts interpret "dispute" broadly and inclusively; the First Circuit, like the FTC, has held that "§ 1692e(8) does not impose a writing requirement on consumers who wish to dispute a debt." *Brady*, 160 F.3d at 67.

II.  **Debt Collector received McIvor's dispute of the debt and then communicated credit information regarding the debt to TransUnion without noting it as disputed.**

McIvor disputed the debt which Debt Collector alleged against her to Debt Collector on April 2, 2013 via TransUnion's Fair Credit Reporting Act-required dispute process. Compl. Ex. A [Docket No. 6, Attach. 1]; see 15 U.S.C. § 1681i. Debt Collector received the dispute and then communicated updated information concerning the debt to TransUnion on April 13, 2013.  Hartz Aff. Ex. A. This communication lacked any indication that McIvor disputed the debt as was required 15 U.S.C. § 1692e(8); *see also Wilhelm v. Credico, Inc.,* 519 F.3d at 418, and the FTC Staff Commentary. *Id*. TransUnion's "Updated Credit File" provided to McIvor, which displays the results of Debt Collector's initial response to McIvor's dispute, also reflects the lack of a dispute notation.  Compl. Ex. C [Docket No. 6, Attach. 3].

The credit information Debt Collector provided to TransUnion became part of McIvor's credit report as submitted, and though TransUnion itself has record of the dispute, the dispute would not appear on McIvor's credit report unless

otherwise noted by Debt Collector in a separate update at a later date. Debt Collector's failure to communicate the dispute to TransUnion is actually a failure to note the dispute to all parties that access McIvor's credit report during the gap in time between the report actually made and any future correction made.  Debt Collector may argue that a gap of a few days of misreporting is negligible. Such a ruling would create a second step of analysis when determining whether an action violated the FDCPA and would subvert the legislature's intention to create a bright line rule by requiring strict compliance.

**III.   Debt Collector's marking of the debt as "disputed" on April 17 does not negate its communication made in violation of the FDCPA on April 13.**

Debt Collector pleads in its answer that "on or about April 17, 2013, "[it] submitted a report to TransUnion containing compliance condition code 'XB' designating the account as disputed."  Answer ¶ 11 [Docket No. 23]; Answer Ex. A [Docket No. 23, Attach. 1]. This update to TransUnion has no bearing on Debt Collector's April 13, 2013 communication, which it also made after receiving McIvor's dispute and which contained no mention of the account's disputed status. Debt Collector cannot un-violate § 1692e(8) by complying with it later.

If the Court were to accept Debt Collector's argument that it is capable of undoing its initial violation of § 1692e(8) by eventually complying with its reporting requirement, it would seem to allow for any number of inaccurate

communications over an indeterminate period of time and vitiate the requirement.  If a debt collector is allowed to misreport debts in this manner one time, then why not allow repeated misreporting provided, that it eventually correct its error? Such an interpretation is inconsistent with plain language of the FDCPA, 8th Circuit precedent, and the staff commentary of the FTC.

## IV. Debt Collector's violation was not a bona fide error made despite procedures reasonably adapted to avoid it.

"A debt collector may not be held liable in any action brought under this title if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). "[T]he bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S.Ct. 1605, 1624 (2010). "'[R]eliance on the advice of counsel or a mistake about the law is not protected by' the bona fide error defense." *Pitch v. Hawks*, 236 F.3d 446, 451 (8th Cir. 2001) (quoting *Hulshizer v. Global Credit Servs., Inc.*, 728 F.2d 1037, 1038 (8th Cir. 1984)).

Debt Collector pleads that "any violation of the FDCPA, which it denies occurred, was unintentional and occurred in spite of procedures reasonably

adapted to avoid such an error." Answer ¶ 4 (Affirm. Defenses) [Docket No. 23]. Debt Collector has provided no support that its procedures are actually calculated to prevent this error. To the contrary, Debt Collector's procedure is set to respond to a dispute without noting the debt is disputed until a later corrective reporting cycle. Further, Debt Collector continues to strenuously deny its communications violated § 1692e(8) at all, suggesting that rather than being an error, it made its April 13 communication pursuant to a standard procedure for replying to consumer disputes received through TransUnion. It does not mark a debt in dispute in its initial reply (made in this case on April 13), but instead waits until its monthly "batch update" to TransUnion, in which it regularly updates the status of all its reported debts, to report the dispute (made April 17). To this end, Debt Collector is defending against an identical violation in *Surinta v. Credit Control Services, Inc., et al.*, 13-CV-817 (MJD/JJG), in which it likewise attempted to later correct its failure to initially report a dispute.

An "incorrect interpretation of the requirements of [the FDCPA]" is not a valid defense to its violation. *Jerman* at 130 S.Ct. at 1624. Under these circumstances, Debt Collector cannot avail itself of the bona fide error defense.

## CONCLUSION

Debt Collector communicated credit information regarding a debt which McIvor disputed without noting that she had done so. This is a straightforward

violation of the FDCPA and McIvor respectfully asks the Court to grant her summary judgment against Debt Collector for its violation of 15 U.S.C. § 1692e(8).

    Respectfully submitted,

Dated: 9/6/13                                                                                                */s/ Bennett Hartz*
                                                                                    Jonathan L. R. Drewes (#387327)
Bennett Hartz (#393136)
DREWES LAW, PLLC
1516 West Lake Street, Ste 300
Minneapolis, MN 55408
T (612) 285-3064
F (612) 285-3062
bennett@dreweslaw.com
***Attorneys for Consumer***