UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Sarah McIvor, | ) Court File No. 13-CV-00956  DSD/JJK |
| ) | |
| Plaintiff, | ) |
| ) | **CREDIT CONTROL SERVICES,** |
| v. | ) **INC.'S MEMORANDUM OF LAW** |
| ) | **IN SUPPORT OF MOTION FOR** |
| Credit Control Services, Inc. and | ) **JUDGMENT ON THE PLEADINGS** |
| Trans Union, LLC, | ) |
| ) | |
| Defendants. | ) |

_____

## I.      INTRODUCTION

The Amended Complaint of plaintiff Sarah McIvor ("Plaintiff") contends that defendant Credit Control Services, Inc. ("CCS") violated section 1692e(8) of the Fair Debt Collection Practices Act ("FDCPA").  The Amended Complaint specifically alleges that CCS failed to mark Plaintiff's account as disputed when it responded to an inquiry from Trans Union regarding the debt.  Plaintiff's FDCPA claim fails as a matter of law for two independent reasons. First, the undisputed facts show that CCS marked Plaintiff's account as disputed in an electronic report transmitted to Trans Union.  Second, if CCS did not indicate the account was disputed when it communicated updated information to Trans Union, it was because CCS reasonably believed that affirmation of the dispute was unnecessary because Trans Union was already aware of Plaintiff's dispute of the debt. Because the material facts established in the closed pleadings prove that Plaintiff's FDCPA claim fails as a matter of law, CCS respectfully requests that its motion for judgment on the pleadings be granted in its entirety.

## II.     FACTUAL BACKGROUND AND PROCEDURAL POSTURE

On May 22, 2013, Sarah McIvor commenced this action against Credit Control Services, Inc. and Trans Union, LLC.  (*See* Compl.)  On June 24, 2013, defendant Trans Union was dismissed from the action without prejudice.

The only cause of action asserted against CCS is a violation of section 1692e(8) of the FDCPA.  (*Id.* at ¶¶ 15-20.)  Section 1692e(8) states: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8) (2012).

In the Amended Complaint, Plaintiff alleges that on April 2, 2013, she disputed her debt with CCS by reporting the dispute directly to Trans Union.  (Compl., ¶ 9.)  She alleges that Trans Union notified CCS of the dispute, and CCS responded to Trans Union's inquiry without expressly marking that the account was disputed.  (*Id.* at ¶¶ 10-11.)  These allegations, along with the incorporated Exhibits A through C, set forth Plaintiff's factual basis for her claim against CCS.  (*Id.*)

On July 22, 2013, CCS filed its Answer and Affirmative Defenses.  (*See* Answer.) In its Answer, CCS affirmatively alleges that on April 17, 2013, CCS submitted a report to Trans Union containing compliance condition code "XB" designating Plaintiff's account as disputed.  (*Id.* at ¶ 11.) The report was attached to the Answer as Exhibit 1.

(*Id.*) The Answer to the Amended Complaint, with the incorporated Exhibit 1, rounds out the factual record. (*Id*.)  Having established through these closed pleadings that Plaintiff's FDCPA claim fails as a matter of law, CCS moves the Court to dismiss the Complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

### III.   LEGAL ANALYSIS

**A.   Standard for Judgment on the Pleadings.**

"Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002).  "[T]he Rule 12(c) judgment on the pleadings procedure primarily is addressed to the . . . function of disposing of cases on the basis of the underlying substantive merit of the parties' claims and defenses as they are revealed in the formal pleadings."  5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2012).  The Court reviews a Rule 12(c) motion under the same standard that governs motions under Rule 12(b)(6).  *In re Levaquin Prods. Liab. Litig.*, 752 F. Supp. 2d 1071, 1076 (D. Minn. 2010); *see also Block v Toyota Motor Co.*, 795 F. Supp. 2d 880, 885 (D. Minn. 2011) (citing *Westcott v. Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990)).

**B.   Plaintiff's FDCPA Claim Fails as a Matter of Law.**

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.  15 U.S.C. § 1692(e) (2012).

3

The FDCPA was enacted as a "shield" and not a "sword." *See Emanuel v. Am. Credit Exch.*, 870 F.2d 805, 808 (2d Cir. 1989). In determining whether conduct violates the FDCPA, reference must be made to the purpose and intent of the FDCPA's statutory scheme. *See Morse v. Dun & Bradstreet, Inc.*, 87 F. Supp. 2d 901, 903-04 (D. Minn. 2000). There is no FDCPA violation where a debt collector's conduct "in no way exemplifies the abusive behavior or false or misleading practices that Congress had in mind when it enacted the FDCPA." *Id.* at 904.

In her FDCPA claim, Plaintiff contends that CCS somehow violated section 1692e(8) by not marking her debt as disputed. However, as detailed below, CCS did report Plaintiff's debt as disputed. And, because Trans Union was already aware that Plaintiff contested the debt, its disputed nature was inherent in CCS's response, so there was no abusive behavior or false and misleading practices.

### 1. CCS Reported the Debt as Disputed.

On April 17, 2013, approximately two weeks after Plaintiff originally disputed the debt to Trans Union, CCS submitted an electronic report to Trans Union which contained the compliance condition code "XB"—the code used to designate an account as disputed. (*See* Answer, ¶ 11 and Ex. 1.) This report demonstrates that CCS did communicate to Trans Union that Plaintiff's debt was disputed. (*Id.*) Because CCS reported the account as disputed, Plaintiff's FDCPA claim fails as a matter of law. *See* 15 U.S.C. § 1692(e)(8) (2012).

### 2.     Trans Union was Already Aware that Plaintiff Disputed the Debt.

Even if CCS had not marked the account as disputed when it communicated updated information in response to Trans Union's April 2, 2013 inquiry, Plaintiff's FDCPA claim would still fail as a matter of law because Trans Union already knew the debt was disputed. The court in *Neeley v. Express Recovery Services*, No. 2:10CV604, 2012 WL 1641198 (D. Utah May 9, 2012), granted summary judgment to a debt collector in a case with a nearly identical fact pattern. In *Neeley*, the defendant debt collector received notification via the electronic dispute reporting system "e-Oscar" that the plaintiff had lodged a dispute with the credit reporting agency, Experian. *Id.* at *1. The defendant responded to the inquiry from Experian without indicating the account was disputed because it "believed that Plaintiff's dispute of the debts was inherent in its response to the e-Oscar disputes lodged by Plaintiff and that the credit bureaus would therefore know that the debts were disputed. In other words, if there were no disputes by Plaintiff, [defendant] would not have had anything to which to respond." *Id.* The defendant then marked the account as disputed on its next regular reporting cycle. *Id.* The court held that the defendant's belief that the disputed nature of the debt was inherent in its response to Experian was reasonable and was not a violation of section 1692e(8). *Id.* at *2.

As in *Neeley*, CCS received the inquiry from Trans Union after Plaintiff had already disputed the debt to Trans Union. (Compl., ¶¶ 9-10.) In responding to the inquiry, it was reasonable for CCS to assume that, because Trans Union was aware of the debt's disputed nature by virtue of receiving the initial complaint from Plaintiff, marking

5

the account as disputed in its response was unnecessary.  Further, as detailed above, CCS designated the debt as disputed on its April 17, 2013 reporting cycle, "thereby fulfilling its obligations to report the debt as disputed." *Neeley*, 2012 WL 1641198 at *2.

Another case examining the parameters of section §1692e(8) is *Wilhelm v. Creditco, Inc.*, 519 F.3d 416 (8th Cir. 2008). In *Wilhelm*, the court upheld the lower court's ruling that a debt collector who receives a dispute from a consumer has no affirmative duty to inform the credit reporting agencies of the dispute. *Id.* at 418.  The court emphasized that "Section 1692e generally prohibits 'false, deceptive, or misleading representation[s]'" and that "the failure to communicate that a disputed debt is disputed is rooted in the basic fraud law principle that, if a debt collector elects to communicate 'credit information' about a consumer, it must not omit a piece of information that is always material, namely, that the consumer has disputed a particular debt." *Id.*  The court concluded that a debt collector who receives notification that a consumer disputed a debt after it has reported on the debt to a credit reporting agency need not also report the dispute. *Id.*

In *Wilhelm*, the court was concerned with a debt collector's reporting obligation under section 1692e(8) after learning of the dispute from the consumer, not from a credit reporting agency.  It is logical, based on the purpose of the FDCPA, that a debt collector's failure to indicate a debt is disputed in a report to a credit reporting agency could be deceptive or misleading where the credit reporting agency is unaware of the dispute.  However, here, CCS learned of the dispute from Trans Union, not from Plaintiff, and any omission of the dispute designation by CCS did not deceive or mislead

6

Trans Union in any way.  Instead, any such omission was the result of the benign and reasonable assumption that because Trans Union was already aware of the dispute, further indication of the dispute was not required.  Because, as a matter of law, any alleged failure to mark the debt as disputed was reasonable and could not result in a violation of the FDCPA, CCS's motion for judgment on the pleadings is properly granted.

## IV.      CONCLUSION

For the foregoing reasons, defendant CCS respectfully requests that its motion for judgment on the pleadings be granted in its entirety.

Dated:  September 9, 2013

        HINSHAW & CULBERTSON LLP


        By:   s/Russell S. Ponessa
            Russell S. Ponessa           Reg. No. 169316
            Ashley M. DeMinck           Reg. No. 393611
            333 South Seventh Street, Suite 2000
            Minneapolis, MN  55402
            Telephone:  612-333-3434
            Fax:  612-334-8888
            rponessa@hinshawlaw.com
            ademinck@hinshawlaw.com

            ATTORNEYS FOR DEFENDANT CREDIT
            CONTROL SERVICES, INC.

121581733v2  0947133