UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Sarah McIvor, | ) Court File No. 13-CV-00956 DSD/JJK |
|     Plaintiff, | ) |
| v. | ) **CREDIT CONTROL SERVICES, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| Credit Control Services, Inc. and Trans Union, LLC, | ) |
|     Defendants. | ) |

## I. INTRODUCTION

Plaintiff Sarah McIvor's motion for summary judgment is properly denied for two reasons. First, the undisputed material facts establish as a matter of law that Credit Control Services, Inc. ("CCS") did not violate the FDCPA. CCS has already filed a motion for judgment on the pleadings presenting that position to the Court for a decision.[1] The second reason is that CCS has pled and factually supported the affirmative defense of bona fide error to any alleged technical violation of the FDCPA. Accordingly, CCS respectfully requests that the Plaintiff's motion for summary judgment be denied in its entirety.

---

[1] *See* CCS's Motion for Judgment on the Pleadings, Notice of Hearing on Motion for Judgment on the Pleadings, and Memorandum of Law in Support of Motion for Judgment on the Pleadings. (Doc. Nos. 38, 39 and 40.) CCS also filed a similar Motion for Judgment on the Pleadings in *Surinta v. Credit Control Services, Inc., et al.*, 13-CV-00817 (MJD/JJG) which is set for hearing on November 22, 2013.

## II. PROCEDURAL POSTURE

Plaintiff's Amended Complaint asserts a single cause of action against CCS for an alleged violation of Section 1692(e)(8) of the FDCPA.[2] (Amended Complaint, *generally*, Doc. No. 6.) CCS answered the Amended Complaint with a general denial and proof it did not violate the FDCPA. (Answer, ¶ 11 and Ex. 1, Doc. No. 23, p. 3 and 23-1, p. 2.) The Answer of CCS also asserts the following affirmative defense:

> CCS states that any violation of the FDCPA, which it denies occurred, was unintentional and occurred in spite of procedures recently adapted to avoid such error.

(Answer, Doc. No. 23, p. 5.)

On September 9, 2013, CCS filed a Motion for Judgment on the Pleadings requesting that the Plaintiff's Amended Complaint be dismissed with prejudice. (*See* Motion for Judgment on the Pleadings, *generally*, Doc. Nos. 38-40.) For purposes of economy and brevity, CCS incorporates by reference the factual and legal positions presented in its Motion for Judgment on the Pleadings.

In addition to this Memorandum of Law, CCS opposes Plaintiff's Motion for Summary Judgment by presenting the Court with the Affidavit of Jeffrey D. Stoddard of Credit Control Services, Inc. ("Stoddard Aff."). This Affidavit sets forth material facts,

---

[2] As the Plaintiff's motion for summary judgment makes clear, and as Plaintiff's counsel acknowledged during the course of the recent Pretrial Conference, she is suing for an alleged four day technical violation of the FDCPA as to which she sustained no actual damages. (*See* Plaintiff's Memorandum Supporting Summary Judgment, Doc. No. 34, p. 2.)

as more fully described below, establishing that Plaintiff is not entitled to summary judgment.

### III.   STATEMENT OF MATERIAL FACTS

On April 2, 2013, Plaintiff contacted Trans Union directly and reported to Trans Union that she was disputing her debt with CCS.  (Amended Complaint, ¶ 9, Doc. No. 6, p. 3.)  After being notified of the dispute by Plaintiff, Trans Union notified CCS of the disputed debt.  (*Id*. at ¶ 10, Doc. No. 6, p. 3.)

On or about April 12, 2013, CCS electronically processed a dispute of the Plaintiff's debt that CCS received from Trans Union through e-Oscar (the credit Bureau's online dispute mechanism).  (Stoddard Aff., p. 2, ¶ 9.)  CCS electronically responded to Plaintiff's dispute to Trans Union on April 12, 2013, or shortly thereafter.  (*Id*.)  In accordance with its policies and procedures, upon receiving Plaintiff's e-Oscar dispute, CCS updated its own electronic database to reflect that the debt was disputed.  (*Id*. at p. 3, ¶ 10.)  On April 17, 2013, as part of CCS's next reporting cycle, CCS reported to Trans Union that Plaintiff's debt was disputed.  (*Id*. at ¶ 11 and Ex. 1.)

Prior to the conduct at issue here, CCS implemented a policy and procedure requiring CCS's employees to update CCS's electronic database to reflect any dispute concerning a debt it was attempting to collect immediately upon receiving notice of such dispute and to ensure that the debt is reported as disputed in CCS's next reporting cycle.  (*Id*. at p. 2, ¶ 5.)  The CCS employees who deal with customer disputes are trained to follow this policy and procedure.  (*Id*. at p. 2, ¶ 6.)  CCS's policy and procedure was adopted to avoid unnecessary delays in reporting disputes and, based on CCS's

experience, is standard practice for debt collection agencies. (*Id*. at p. 2, ¶ 7.) It is also CCS's policy and procedure to report all collection activity, including consumer disputes, on all of its accounts to the credit bureaus once per week for each calendar month. (*Id*. at p. 2, ¶ 8.) Similar reporting practices are standard among debt collection agencies. (*Id*.)

CCS believed it was inherent in its response to the e-Oscar dispute Plaintiff lodged directly with Trans Union that Plaintiff disputed the debt, and that the credit bureau knew the debt was disputed. (*Id*. at p. 3, ¶ 12.) CCS also believed that the credit bureaus, including Trans Union, similar to CCS's policy and procedure, would note the debt as disputed upon receiving Plaintiff's notice that the debt was disputed. (*Id*. at p. 3, ¶ 13.) CCS did not believe it was not reporting the debt as disputed when it responded to Trans Union following the Plaintiff's notice of dispute to Trans Union. (*Id*. at p. 3, ¶ 14.)

As outlined below, an application of controlling law to these material facts establishes that CCS is entitled to judgment as a matter of law and that summary judgment cannot properly be granted for the Plaintiff.

### IV.  LEGAL ANALYSIS

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *See id.* at 252.

The court views all evidence and inferences in a light most favorable to the nonmoving party. *See id.* at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. *See Celotex v. Catrett*, 477 U.S. 317, 324 (1986). Moreover, if a plaintiff cannot support each essential element of his claim, the court must grant summary judgment, because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322-23.

A.  **CCS Did Not Violate the FDCPA as a Matter of Law.**

Section 1692e of the FDCPA states:

A debt collector may not use any <u>false, deceptive, or misleading</u> representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

• • • •

(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

15 U.S.C. § 1692e(8) (2012) (emphasis added). This section reflects the purpose and intent for enacting the FDCPA, which is "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e) (2012). Courts have cautioned against finding the FDCPA violated where the debt collector's actions "in no way exemplif[y] the abusive behavior or false or misleading

practices that Congress had in mind when it enacted the FDCPA." *See Morse v. Dun & Bradstreet, Inc.*, 87 F. Supp. 2d 901, 904 (D. Minn. 2000).

In the present case, there was no false, deceptive or misleading conduct by CCS. CCS properly reported to Trans Union that the debt was disputed. Moreover, because the Plaintiff had already directly notified Trans Union of the dispute, no one was misled or deceived by the conduct of CCS.

### 1.   The Plaintiff Reported the Debt as Disputed to Trans Union, and CCS Also Reported the Debt as Disputed to Trans Union.

Plaintiff readily acknowledges that on April 2, 2013, she contacted Trans Union and reported her debt with CCS as disputed. (Amended Complaint, ¶ 9, Doc. No. 6, p. 3.) On or about April 12, 2013, CCS electronically processed the dispute of the Plaintiff's debt that CCS received from Trans Union. (Stoddard Aff., p. 2, ¶ 9.) On April 17, 2013, as part of CCS's next reporting cycle, CCS reported to Trans Union that the Plaintiff's debt was disputed. (*Id*. at p. 3, ¶ 11.) A true and correct copy of CCS's report to Trans Union noting the debt as disputed is attached as Exhibit 1 to the Affidavit of Jeffrey D. Stoddard.[3] Because CCS reported the account as disputed, Plaintiff's FDCPA claim fails as a matter of law. *See* 15 U.S.C. § 1692(e)(8) (2012). *See also Neeley v. Express Recovery Servs.*, No. 2:10CV604, 2012 WL 1641198, at *2 (D. Utah May 9, 2012).

---

[3]   Exhibit 1 is an electronic report to Trans Union containing compliance condition code "XB" – the code used to designate an account as disputed. (Stoddard Aff., p. 3, ¶ 11.)

### 2.   There Is No FDCPA Violation Because Trans Union Was Already Aware that Plaintiff Disputed the Debt.

Plaintiff's FDCPA claim against CCS fails as a matter of law because Trans Union already knew the debt was disputed. The court in *Neeley v. Express Recovery Servs.*, WL 1641198 (D. Utah May 9, 2012), granted summary judgment to a debt collector in a case with a nearly identical fact pattern. In *Neeley*, the defendant debt collector received notification via the electronic dispute reporting system "e-Oscar" that the Plaintiff had lodged a dispute with the credit reporting agency, Experian. *Id.* at *1. The defendant responded to the inquiry from Experian without indicating the account was disputed because it "believed that Plaintiff's dispute of the debts was inherent in its response to the e-Oscar disputes lodged by Plaintiff and that the credit bureaus would therefore know that the debts were disputed. In other words, if there were no disputes by Plaintiff, [defendant] would not have had anything to which to respond." *Id.* The defendant then marked the account as disputed on its next regular reporting cycle. *Id.* The court held that the defendant's belief that the disputed nature of the debt was inherent in its response to Experian was reasonable and was not a violation of section 1692e(8). *Id.* at *2.

As in *Neeley*, CCS received the inquiry from Trans Union after Plaintiff had already disputed the debt to Trans Union. (Compl., ¶¶ 9-10, Doc. No. 6.) In responding to the inquiry, it was reasonable for CCS to assume that, because Trans Union was aware of the debt's disputed nature by virtue of receiving the initial complaint from Plaintiff, marking the account as disputed was unnecessary. Further, as detailed above, CCS

designated the debt as disputed during its April 17, 2013 reporting cycle, "thereby fulfilling its obligations to report the debt as disputed." *Neeley*, 2012 WL 1641198 at *2.

Unlike *Neeley*, the cases relied upon by Plaintiff in support of her motion for summary judgment are factually dissimilar from the present case. Plaintiff relies on *Wilhelm v. Creditco, Inc.*, 519 F.3d 416 (8th Cir. 2008), to support her contention that "once a debt collector has received notice that a debt is disputed, all future communications regarding the alleged debt must include a designation of this fact." (Plaintiff's Memo. at pp. 5-6, Docket No. 34.) The court in *Wilhelm* was concerned with whether a debt collector who learned of a dispute from a consumer had an affirmative obligation to inform the credit reporting agencies of the dispute. *Id.* at 418. The court held that no such duty exists unless the debt collector "elects to communicate credit information about a consumer" because, based on principles of fraud, such an omission may be material. *Id.*

The essential, and fatal, distinction between the present case and *Wilhelm* is the fact that, in *Wilhelm*, the consumer reported the dispute directly to the debt collector, not to the credit reporting agency. Therefore, the court in *Wilhelm* was addressing a factual scenario in which the credit reporting agency would have no way of learning that the debt was disputed unless the dispute was communicated by the debt collector. It is logical that, in such a situation, failure to denote the dispute may be construed as deceptive or misleading under the FDCPA. Here, however, CCS received notice of the dispute from Trans Union, not from Plaintiff, and thus the conduct of CCS did not deceive or mislead Trans Union in any way. CCS knew Trans Union was already aware of the Plaintiff's

dispute of the debt and, per its standard practices and procedures, CCS confirmed the dispute in its report to Trans Union on April 17, 2013. (*See* Stoddard Aff., *generally*.)

Plaintiff's reliance on *Brady v. Credit Recovery Co.*, 160 F.3d 64 (1st Cir. 1998) is similarly misplaced. *Brady* addressed whether a consumer's verbal dispute of a debt triggers the debt collector's obligation to communicate that the debt is disputed when providing information regarding the debt to a third party. *Id.* at 66. Like in *Wilhelm*, *Brady* is factually distinct from the present action because the consumer in *Brady* reported the dispute directly to the debt collector, and the debt collector conveyed information regarding the debt to an outside party who had no prior knowledge of the dispute. *Id.* at 65. Because Trans Union already knew of Plaintiff's dispute, *Brady* is inapposite and properly disregarded.

The record before the Court sets forth undisputed material facts establishing that CCS did not violate the FDCPA as a matter of law. Accordingly, Plaintiff's motion for summary judgment is properly denied.

**B.    CCS Has Pled and Factually Supported a Bona Fide Error Defense to the Plaintiff's Alleged Technical Violation of the FDCPA.**

If there is some technical violation of the FDCPA by CCS in this case, there is still no liability because any such violation was unintentional and the result of a bona fide error. The FDCPA provides shelter for debt collectors who make an honest mistake. Specifically, section 1692k(c) provides an exception to FDCPA liability for unintentional violations that "resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692(c) (2012). To

demonstrate a bona fide error under the FDCPA, "a debt collector must prove by a preponderance of the evidence that its FDCPA violation was unintentional and was caused by an objectively bona fide error (i.e., one that is plausible and reasonable) made despite the use of procedures reasonably adapted to prevent that specific error." *Wilhelm*, 519 F.3d at 420. The defendant is not required to show the policies and procedures were perfect, only that they show reasonable precaution. *See Kort v. Diversified Collection Serv., Inc.*, 394 F.3d 530, 539 (7th Cir. 2005).

In this case, any potential violation of the FDCPA by CCS resulted from a bona fide error. CCS did not intend to communicate false credit information to Trans Union concerning Plaintiff's debt. CCS reasonably believed it was inherent in its response to the e-Oscar dispute Plaintiff lodged with Trans Union that Plaintiff disputed the debt, and that Trans Union knew the debt was disputed. (Stoddard Aff., p. 3, ¶ 12.) CCS also believed that Trans Union, who already was notified of the dispute by the Plaintiff, would flag the debt as disputed. (*Id*. at p. 3, ¶ 13.)

Second, any error by CCS was bona fide. Plaintiff does not contend that CCS's alleged error was not plausible, or was unreasonable. And, as noted above, courts have expressly found it reasonable for a debt collector to assume that it is unnecessary to mark a debt as disputed when the credit reporting agency is already aware of the dispute. *See Neeley v. Express Recovery Servs.*, 2012 WL 1641198 at *2-3.

Finally, CCS employed a policy and procedure for reporting disputes that was designed to ensure that disputed debts were timely reported. Courts apply a two-step inquiry when determining whether a debt collector's policies and procedures satisfy the

bona fide error test: 1) whether the debt collector maintained procedures to avoid errors, and 2) whether the procedures were reasonably adapted to avoid the specific error at issue in the litigation. *See Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir. 2006). Here, CCS implemented a policy and procedure requiring its employees to update its records to reflect any dispute immediately upon receiving notice of such dispute, thereby ensuring that the debt would be properly reported as disputed on its next reporting cycle. (Stoddard Aff., p. 2, ¶¶ 5-8.) CCS followed these procedures by promptly updating its own database and by reporting the debt as disputed in its April 17, 2013 reporting cycle. (*Id.* at p. 3, ¶¶ 10-11.) These procedures were maintained to avoid errors in dispute reporting. (*Id.* at p. 2, ¶¶6-7.)

The Plaintiff has not presented any facts disputing the material facts presented by CCS in support of its bona fide error defense. Instead, Plaintiff argues that CCS "cannot avail itself of the bona fide error defense" because the defense is somehow based on an incorrect interpretation of the FDCPA. (Plaintiff's Memorandum, Doc. No. 34, p. 9.) CCS does not rely on a mistake of law to establish its bona fide error defense. This same argument by the Plaintiff was considered and rejected by the court in *Neeley*.

> Here, Defendant's error - if it was an error - was its belief that the credit bureaus would obviously know that Plaintiff's debts were disputed by the very fact that they received both Plaintiff's disputes and Express Recovery's responses to those disputes, and that there was no danger for misleading the credit bureaus prior to Express Recovery's next reporting cycle when the debts were independently reported as disputed. This error goes to the fact of how Express Recovery's responses to Plaintiff's disputes would be understood by the credit bureaus. Express Recovery's defense does not rely on a mistaken interpretation of the FDCPA.

*Neeley*, 2012 WL 1641198, at *3, n.3.

-12-

CCS has presented the Court with material evidence establishing its bona fide error defense as a matter of law, thus precluding a finding of summary judgment for the Plaintiff.

## V. **CONCLUSION**

For the foregoing reasons, CCS respectfully requests that Plaintiff's motion for summary judgment be denied in its entirety.

Dated:  September 27, 2013	HINSHAW & CULBERTSON LLP


By:   s/Ashley M.DeMinck
   Russell S. Ponessa, Reg. No. 169316
   Ashley M. DeMinck, Reg. No. 393611
   333 South Seventh Street, Suite 2000
   Minneapolis, MN  55402
   Telephone:  612-333-3434
   Fax:  612-334-8888
   rponessa@hinshawlaw.com
   ademinck@hinshawlaw.com

   ATTORNEYS FOR DEFENDANT
   CREDIT CONTROL SERVICES, INC.

121584103v1 0947133