UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Sarah McIvor, | ) Court File No. 13-CV-00956 DSD/JJK |
| Plaintiff, | ) |
| v. | ) **AFFIDAVIT OF JEFFREY D.** |
| | ) **STODDARD OF CREDIT** |
| | ) **CONTROL SERVICES, INC.** |
| Credit Control Services, Inc. and | ) |
| Trans Union, LLC, | ) |
| Defendants. | ) |

STATE OF MASSACHUSETTS )
                       ) ss.
COUNTY OF MIDDLESEX    )

Jeffrey D. Stoddard, being duly sworn, dates:

1. I am the Compliance Manager for Credit Control Services, Inc. ("CCS"), in which position I oversee the operations of CCS. I have been the Compliance Manager since November 21, 2010.

2. I am authorized to submit this Affidavit on behalf of CCS based on my personal knowledge and based on my review of the records maintained by CCS in the ordinary course of its business.

3. As Compliance Manager, I am intimately familiar with the policies and procedures pursuant to which CCS carries out its debt collection business.

4. I have over thirteen (13) years of experience in the debt collection industry. I have attended education and training sessions and work with both inside and outside counsel on a daily basis concerning compliance with the Fair Debt Collection Practices

121583614v2 0947133

Act. I also frequently research compliance issues through court case research as well as through the collection industry's trade association, ACA International.

5. Long before the conduct at issue in this case, CCS implemented a policy and procedure requiring CCS's employees to update CCS's electronic database to reflect any dispute concerning a debt it was attempting to collect immediately upon receiving notice of such dispute and to ensure that the debt would be properly reported as disputed in CCS's next reporting cycle.

6. The CCS employees who deal with customer disputes are trained to follow this policy and procedure.

7. CCS's policy and procedure in this regard was adopted to avoid unnecessary delays in reporting disputes and, based on my experience, is standard practice for debt collection agencies.

8. It is also CCS's policy and procedure to report all collection activity, including consumer disputes, on all of its accounts to the credit bureaus once per week for each calendar month. Similar reporting practices are standard among debt collection agencies.

9. On or about April 12, 2013, CCS electronically processed a dispute of the plaintiff's debt that CCS received from Trans Union through e-Oscar (the credit bureau's online dispute mechanism). CCS electronically responded to plaintiff's e-Oscar dispute using the e-Oscar system on April 12, 2013, or shortly thereafter.

10. In accordance with its policies and procedures, upon receiving plaintiff's e-Oscar dispute, CCS updated its own electronic database to reflect that the debt was disputed.

11. On April 17, 2013, as part of CCS's next reporting cycle, CCS reported to Trans Union that the plaintiff's debt was disputed. A true and correct copy of this report is attached as Exhibit 1.

12. CCS believed it was inherent in its response to the e-Oscar dispute plaintiff lodged with Trans Union that plaintiff disputed the debt, and that the credit bureaus would therefore know that the debt was disputed. If there was no dispute by plaintiff, CCS would not have had anything to respond to.

13. CCS also believed that the credit bureaus, including Trans Union, similar to CCS's policy and procedure, would flag the plaintiff's debt as disputed in their own data systems upon receiving plaintiff's e-Oscar dispute and CCS's responses thereto.

14. CCS did not believe that it was failing to report the plaintiff's debt as disputed when it responded to plaintiff's e-Oscar dispute with Trans Union.

FURTHER YOUR AFFIANT SAYETH NOT.

Jeffrey D. Stoddard

Subscribed and sworn to before me this 26th day of September, 2013.

_____
Notary Public

GERENE PRILUTSKY
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
March 23, 2018

121583614v2 0947133