UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
COURT FILE NUMBER 13-CV-956 (DSD/JJK)

_____

Sarah McIvor,

        Plaintiff,

v.

Credit Control Services, Inc. dba
Credit Collection Services,

        Defendant.

**PLAINTIFF'S MEMORANDUM OPPOSING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

_____

Plaintiff Sarah McIvor submits this memorandum opposing Defendant Credit Control Services, Inc. dba Credit Collection Services' ("CCS") Motion for Judgment on the Pleadings. Because CCS violated 15 U.S.C. § 1692e(8) of the Fair Debt Collection Practice Act (FDCPA) by conveying credit information regarding McIvor's disputed debt to Trans Union, LLC ("Trans Union") without indicating McIvor's contemporaneous dispute, McIvor has a claim that should proceed. McIvor, through a previously-filed motion, also seeks summary judgment at this upcoming hearing.

## FACTS PLED

McIvor disputed a debt to CCS through Trans Union's Fair Credit

Reporting Act (FCRA) dispute process. Compl. ¶ 9 [Docket No. 6]. CCS received McIvor's dispute on April 2, 2013. Compl. ¶ 9, 10 [Docket No. 6]; Answer ¶ 9, 10 [Docket No. 23]. CCS then communicated credit information regarding McIvor's debt to Trans Union (either on April 20 as stated by the Complaint, or on or about April 13 as provided by the affidavit accompanying the cross-motion) without noting that the account was disputed. Compl. ¶ 11, 16 [Docket No. 6]; Hartz Aff. Ex. A. [Docket No. 33].

## STANDARD

"After the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." F.C.R.P. 12(c). "The standard is strict: judgment on the pleadings is not appropriate unless the moving party has 'clearly establishe[d] that no material issue of fact remains to be resolved and he is entitled to judgment as a matter of law.'" *Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 428 (8th Cir. 1993) (*quoting Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters*, 627 F.2d 853, 855 (8th Cir. 1980)). "This court must accept as true all facts pled by the non-moving party, and grant all reasonable inferences from the pleadings in the nonmoving party's favor." *Id*.

## ARGUMENT

**I.   On April 13, 2013, CCS reported McIvor's disputed debt to Trans Union without marking the debt as disputed.**

CCS' first argument is, in full:

> "On April 17, 2013, approximately two weeks after Plaintiff originally disputed the debt to Trans Union, CCS submitted an electronic report to Trans Union which contained the compliance condition code "XB"-- the code used to designate an account as disputed. (*See* Answer, ¶ 11 and Ex. 1.) This report demonstrates that CCS did communicate to Trans Union that Plaintiff's debt was disputed. (*Id*.) Because CCS reported the account as disputed, Plaintiff's FDCPA claim fails as a matter of law. *See* 15 U.S.C. § 1692(e)(8) (2012)."

Memo. at 4. CSS misses the point. Whether it correctly reported on April 17 has no bearing on whether it correctly reported on April 13 or April 20, as it made multiple reports of the debt to Trans Union, some of which were not compliant with the law. This section, like CCS' Memorandum generally, fails to mention the credit update CCS sent to Trans Union on April 13, which it also made after receiving McIvor's April 2 dispute and which lacked any indication of the debt's disputed nature. Hartz Aff. Ex. A. [Docket No. 33.]

What's more, the Complaint (which must be read as true for the purposes of CCS' motion) alleges that CCS made a communication lacking note of McIvor's dispute on April 20 after receiving McIvor's dispute on April 2, a

straightforward violation of § 1692e(8). CCS has elected not to address this.

**II.    After CCS received McIvor's dispute on April 2, the FDCPA required it to note the debt as disputed *every time* it conveyed credit information regarding the debt.**

The FDCPA prohibits debt collectors from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). "Strict liability [is] imposed upon debt collectors by the FDCPA." *Picht v. Hawks*, 236 F.3d 446, 451 (8th Cir. 2001). The 8th Circuit addressed this very subsection of the statute in *Wilhelm v. Credico, Inc.*:

> Section 1692e generally prohibits 'false, deceptive, or misleading representation.' Subsection 1692e(8) applies to the 'communicating' of 'credit information.' 'Communication' is defined as 'the conveying of information regarding a debt directly or indirectly to any person through any medium.' § 1692a(2). Reading these provisions together, as we must, the relevance of the portion of § 1692e(8) on which [the plaintiff] relies — 'including the failure to communicate that a disputed debt is disputed' — is rooted in the basic fraud law principle that, if a debt collector elects to communicate 'credit information' about a consumer, *it must not omit a piece of information that is always material*, namely, that the consumer has disputed a particular debt.

519 F.3d 416, 418 (8th Cir. 2008) (emphasis added). The Court went on to cite supporting FTC commentary: "[i]f a debt collector knows that a debt is disputed by the consumer [either from receipt of written notice (section [1692g]) or other means,] and reports it to a credit bureau, he must report it as disputed." *Id*. (quoting FTC Staff Commentary, 53 Fed.Reg. 50097-02, 50106 (Dec. 13, 1988) (additional FTC commentary added by brackets)).

CCS cites *Wilhelm* as upholding "the lower court's ruling that a debt collector who receives a dispute from a consumer has no affirmative duty to inform the credit reporting agencies of the dispute." CCS's Memo. at 6. This ignores the factual distinction drawn in *Wilhelm* between two breeds of cases: 1) cases where a debt collector receives a consumer dispute and elects not to update the credit report, which is acceptable, and 2) cases where a debt collector receives a consumer dispute and updates the credit report without noting the dispute, which is unacceptable. In other words, if CCS elects to update the credit bureau with additional information, it must do so with information of the dispute. This distinction is clear in the 8th Circuit's analysis of *Wilhelm's* claims against Pinnacle, another defendant-collector:

> As for the claim against Pinnacle, Wilhelm did submit evidence that Pinnacle reported credit information to credit reporting agencies in

> December 2003 without reporting that the debt was disputed. However, even crediting the Credico employee's affidavit, there is no evidence that these reports were made after Pinnacle learned of the dispute in mid-December.

*Id.* at 418.

Compare CCS' statement to the actual *Wilhelm* holding: "If a debt collector knows that a debt is disputed by the consumer . . . *and reports it to a credit bureau*, he must report it as disputed . . . *When a debt collector learns of a dispute after reporting the debt to a credit bureau, the dispute need not also be reported*." *Wilhelm*, 519 F.3d at 418 (quoting FTC Staff Commentary, 53 Fed.Reg. 50097-02, 50106 (Dec. 13, 1988)) (emphasis in original). It is clear that debt collectors *do* have an affirmative duty to inform credit reporting agencies of a dispute when updating disputed information on a credit report, but do not have an affirmative duty under the FDCPA to take affirmative action to update a report after receiving a consumer dispute. Once the collector elects to update the consumer's report, however, as CCS did, it must note the dispute.

Later, CCS correctly cites *Wilhelm* as holding: "if a debt collector elects to communicate 'credit information' about a consumer, it must not omit a piece of information that is always material, namely, that the consumer has disputed a particular debt." Memo. at 6 (quoting 519 F.3d at 418). This holding cuts to the

heart of the issue: CCS elected to communicate credit information about McIvor on April 13 and omitted in its update the fact that McIvor had disputed it. This was a violation of § 1692e(8).

Debt Collector argues that it need not comply with § 1692e(8) because "Trans Union already knew the debt was disputed," saying that "it was reasonable for CCS to assume that, because Trans Union was aware of the debt's disputed nature by virtue of receiving the initial complaint from Plaintiff, marking the account as disputed in its response was unnecessary." Memo. at 5-6. There are two problems with this argument. First, the FDCPA is a strict liability statute, and debt collectors must with each section to the letter. *Picht v. Hawks*, 236 F.3d at 451. Mistakes of law, such as CCS' assumption here that it did not need to note the dispute to Trans Union, are not defenses to FDCPA liability. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, LPA*, 130 S.Ct. 1605, 1608 (2010). A standard allowing other parties' knowledge to enter into the applicability of the statute would blur the ubiquitous and bright-line interpretation of the FDCPA, at once making compliance more difficult, weakening consumer claims, and slowing the speed of litigation by requiring subjective determinations of liability on a case-by-case basis.

CCS leans its argument on *Neely v. Express Recovery Services*, No. 2:10CV604, 2012 WL 1641198 (D. Utah May 9, 2012), an unreported, unpersuasive district court case from Utah that has yet to be followed in its own district. Its position contradicts both § 1692e(8) and *Wilhelm*, which respectively prohibit "the failure to communicate that a disputed debt is disputed" and "omit[ting] a piece of information that is always material namely, that the consumer has disputed a particular debt." 15 U.S.C. § 1692e(8); 519 F.3d at 418.

Second, the trade-line information provided by Debt Collector is simply parroted by the credit reporting agency onto the consumer's report. As a practical matter CCS was not communicating inaccurate credit information only to Trans Union. After all, Trans Union is not a normal party but a credit reporting agency, and the incomplete information CCS transmitted to Trans Union is broadcast to all creditors, lenders, mortgagees, lien-holders, employers, and all other interested parties existing and potential who wish to access McIvor's credit report. This makes CCS' omission not harmless but particularly egregious, especially if an interested third-party, such as a lender, were to seek information in the time gap after CCS's initial reporting and before CCS sought to correct its mistake. CCS cannot feign ignorance of the purpose of the information it sent to

Trans Union, because Trans Union broadcasting the information CCS provides to it nearly verbatim is the foundation of the relationship between the companies.

Exhibit B to the Complaint shows that the reported information from CCS is not edited by Tran Union and does not indicate a dispute as of April 20, 2013, caused by CCS' initial report on April 13. Compl. Ex. B at 2. If a dispute (an "XB" code) was initially provided, then "consumer dispute" would be included in the "remarks" of the trade-line, rather than being absent entirely from the credit reporting at that time. That Trans Union knew of the dispute does not relieve CCS of its duty under § 1692e(8) to note the dispute in all its communications regarding the debt (and *especially* on all its credit report updates). Ultimately, CCS had a duty to mark the debt as disputed in every communication it sent to Trans Union and it failed.

## CONCLUSION

The FDCPA and the 8th Circuit require CCS to "communicate that a disputed debt is disputed" whenever it "communicate[s] to any person [disputed] credit information." On April 13, 2013, it communicated disputed credit information about McIvor to Trans Union without noting the dispute. The complaint explicitly alleges the same occurred on April 20, 2013. This is a clear-

cut violation of § 1692e(8) for which the FDCPA provides a remedy of actual damages, statutory damages of $1,000.00, the costs of the action, and reasonable attorney's fees from debt collector.  The Court should deny CCS' motion and grant McIvor's proper request for summary judgment.

     Respectfully submitted,

Dated: 9/30/13             /s/ *Bennett Hartz*
Jonathan L. R. Drewes (#387327)
Bennett Hartz (#393136)
DREWES LAW, PLLC
1516 West Lake Street, Ste 300
Minneapolis, MN 55408
T (612) 285-3064
F (612) 285-3062
bennett@dreweslaw.com
***Attorneys for Consumer***