UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Sarah McIvor, | ) Court File No. 13-CV-00956 DSD/JJK |
| Plaintiff, | ) |
| v. | ) **DEFENDANT CREDIT CONTROL SERVICES, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS** |
| Credit Control Services, Inc. and Trans Union, LLC, | ) |
| Defendants. | ) |

## I.   INTRODUCTION

Plaintiff Sarah McIvor's opposition to Credit Control Services, Inc.'s ("CCS") motion for judgment on the pleadings is properly disregarded for two reasons. First, plaintiff relies on an unsupported and incorrect factual record. Second, plaintiff misconstrues the legal standard that governs her FDCPA claim. Plaintiff relies exclusively on inapposite case law and advocates an application of the FDCPA that is contrary to the congressional purpose of the Act. Plaintiff has identified no dispute involving any material issue of fact and CCS is entitled to judgment as a matter of law.

## II.   LEGAL ANALYSIS

**A.   Legal Standard for Motion for Judgment on the Pleadings.**

When considering a motion for judgment on the pleadings, the Court is limited to the factual record established by the closed pleadings. *See Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989). A plaintiff cannot use a brief to present new allegations not contained in the Complaint. *Id.* ("[I]t is axiomatic that a

complaint may not be amended by the briefs in opposition to a motion to dismiss. To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment … simply by raising a point in a brief.").[1]

**B.     The Undisputed Facts Show that CCS Marked Plaintiff's Account Disputed on April 17, 2013.**

In an effort to convince this Court that CCS is not entitled to judgment on the pleadings, plaintiff first attempts to create a fact dispute regarding whether CCS reported that her account was disputed to Trans Union. (Pl.'s Opp'n, Doc. No. 46, p. 9.) Plaintiff attached exhibits to her Amended Complaint demonstrating that Trans Union updated plaintiff's account information on April 20, 2013. (Am. Comp., Exs. B and C, Doc. No. 6-2, p.1, and 6-3, pp. 1-2.) Plaintiff now alleges that, because Trans Union's April 20, 2013, report did not indicate the account was disputed, CCS never reported the dispute. (Pl.'s Opp'n, Doc. No. 46, p. 9.) This allegation is without merit. On April 17, 2013, CCS submitted a report to Trans Union containing compliance condition code "XB" designating plaintiff's account as disputed. (Ans., ¶ 11, Doc. No. 23, p. 3.) Trans Union's April 20, 2013, report says Trans Union updated the CCS account on January 22, 2013. (Am. Comp., Ex. C, Doc. No. 6-3, p. 2.) If Trans Union's April 20, 2013, report did not

---

[1] Plaintiff filed a summary judgment motion that is currently pending before this Court. Plaintiff's Memorandum in Support of Summary Judgment and CCS's Memorandum in Opposition to Summary Judgment address the factual issues that are outside the scope of the closed pleadings before the Court for purposes of this motion. (*See* Pl.'s Memo., Doc. No. 34; D.'s Opp'n, Doc. No. 43.)

121584812 0947133

include CCS's April 17, 2013, report that the debt was disputed, plaintiff's claim is not properly asserted against CCS.[2]

### C.   Plaintiff's FDCPA Claim Fails as a Matter of Law.

Plaintiff also alleges that CCS responded to Trans Union on April 13, 2013, without marking her account as disputed, and that this fact warrants denial of CCS's motion for judgment on the pleadings.[3] (Pl.'s Opp'n, Doc. No. 46, p. 3.) Even if plaintiff's recitation of the facts is true, her claims against CCS still fail as a matter of law. In her attempt to prove otherwise, plaintiff misconstrues the holding in *Wilhelm v. Creditco, Inc.*, 519 F.3d 416 (8th Cir. 2008), and ignores the sound reasoning and logic of the decision in *Neeley v. Express Recovery Services*, No. 2:10CV604, 2012 WL 1641198 (D. Utah May 9, 2012).  Plaintiff also fails to meet her burden to establish that CCS engaged in conduct that was false, deceptive or misleading. CCS's motion for judgment on the pleadings is properly granted.

### 1.   Plaintiff Relies on Inapposite Case Law to Oppose CCS's Motion for Judgment on the Pleadings.

Plaintiff cites *Wilhelm v. Creditco, Inc.* for the legal proposition that *any* time a debt collector communicates with a credit reporting agency regarding a disputed debt, the debt collector must note the debt as disputed. (Pl.'s Opp'n, Doc. No. 46, pp. 4-7.) This reading is too broad and does not state the precedential holding in *Wilhelm*.  In *Wilhelm*,

---

[2] Plaintiff previously sued and then dismissed Trans Union from this lawsuit. (Stip., Doc. No. 18, pp. 1-2.)

[3] These alleged facts were first presented by plaintiff in an affidavit plaintiff filed in support of her motion for summary judgment. (Aff., ¶ 2 and Ex. A, Doc. No. 33, p. 1 and 33-1, pp. 2-6.)

121584812 0947133

the creditor disputed the debt directly to the debt collector, and as a result, the credit reporting agency could only learn of the dispute from the debt collector. 519 F.3d at 418. The court stated in dicta that, in that specific situation, the debt collector's failure to appropriately mark the dispute could be actionable under the FDCPA. *Id.* The facts considered by the court in *Wilhelm* do not translate to the present case. Here, plaintiff already disputed her debt with CCS to Trans Union, and Trans Union's knowledge of the dispute was evident in the initial exchange with CCS. This factual distinction is not only fundamental to the question of liability under the FDCPA, it demonstrates plaintiff's misplaced reliance on *Wilhelm*.

Unlike *Wilhelm*, the court in *Neeley v. Express Recovery Services* considered a fact pattern that directly parallels the present case, and concluded that the debt collector was reasonable in not marking the account as disputed because the credit reporting agency was already aware of the dispute. 2012 WL 1641198, *2. Plaintiff ignores the factual similarities with *Neeley*, and instead states only that *Neeley* is contrary to *Wilhelm*, unreported and unpersuasive.[4] (Pl.'s Opp'n, Doc. No. 46, p. 8.) *Neeley* is not contradictory to *Wilhelm*, rather *Neeley* addresses a factual nuance not before the court in *Wilhelm* because in *Neeley* the credit reporting agency knew the debt was disputed. 2012

---

[4] In addition to rejecting *Neeley*, Plaintiff also argues that CCS's presumption that Trans Union would mark the account as disputed was not reasonable because "the trade-line information provided by Debt Collector is simply parroted by the credit reporting agency onto to consumer's report." (Opp'n, Doc. No. 46, p. 8.) Plaintiff provides no evidentiary support for this statement, nor does plaintiff provide support for her suggestion that CCS had knowledge of Trans Union's internal procedures. Plaintiff is not permitted to raise new and unsupported factual issues in her brief, and these allegations are necessarily disregarded. *See Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989).

WL 1641198, *1.  And while it is an unreported decision, *Neeley* is the only existing decision to consider this specific application of the FDCPA, and its persuasive value should not be discounted. *Neeley* demonstrates that, as a matter of law, CCS did not violate the FDCPA, and CCS's motion for judgment on the pleadings is properly granted.

> **2.    Plaintiff's Position is Contrary to the Purpose and Policy Behind the FDCPA.**

The liability position advanced by plaintiff is contrary to the congressional purpose for enacting the FDCPA, which the statute explains is "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e) (2012).  Adopting plaintiff's reasoning would penalize debt collectors whose conduct, like CCS's, was in no way false, deceptive or misleading.[5] This is not the law. *See Morse v. Dun & Bradstreet, Inc.*, 87 F. Supp. 2d 901, 904 (D. Minn. 2000) (no FDCPA violation where the debt collector's actions "in no way exemplif[y] the abusive behavior or false or misleading practices that Congress had in mind when it enacted the FDCPA."). The language of the FDCPA and the case law interpreting it demonstrates the need for a case-by-case analysis of alleged FDCPA violations. This type of individual case analysis was conducted by the court in *Neeley*, and as a result, the court found it reasonable—not false, deceptive or misleading—for the debtor to assume the credit

---

[5] As Plaintiff's Memorandum in Opposition and her Rule 26(a)(1) Initial Disclosures make clear, plaintiff is suing for an alleged four day technical violation of the FDCPA as to which she sustained no actual damages.  (*See* Pl.'s Opp'n, Doc. No. 46, p. 3.)

reporting agency would mark the account as disputed upon learning of the dispute. 2012 WL 1641198, *2. The same analysis applies here. Plaintiff's proposed application of the FDCPA is not supported by the statute or case law and is properly disregarded.

### III.   CONCLUSION

Based on the undisputed facts established by plaintiff's Amended Complaint and CCS's Answer, it can be determined as a matter of law that CCS did not violate the FDCPA and is thus entitled to judgment on the pleadings.

Dated: October 14, 2013.          HINSHAW & CULBERTSON LLP


By: /s/Russell S. Ponessa
　　Russell S. Ponessa          Reg. No. 169316
　　Ashley M. DeMinck          Reg. No. 393611
　　333 South Seventh Street, Suite 2000
　　Minneapolis, MN  55402
　　Telephone:  612-333-3434
　　Fax:  612-334-8888
　　rponessa@hinshawlaw.com
　　ademinck@hinshawlaw.com

　　ATTORNEYS FOR DEFENDANT CREDIT
　　CONTROL SERVICES, INC

121584812 0947133